In the Matter of STATE COMMISSION FOR HUMAN RIGHTS, Respondent, v. MELL FARRELL, Individually and as President of Local Union No. 28 of Sheet Metal Workers' International Association of Greater New York, et al., Appellants.

First Department, April 13, 1967.

*Samuel Harris Cohen* of counsel (*Richard A. Ellison* with him on the brief; *Cohn & Glickstein*, attorneys), for appellants.

*Thomas A. Shaw, Jr.,* of counsel (*Richard Cain* with him on the brief; *Breed, Abbott & Morgan*, attorneys), for Thomas A. Mitchell, appellant.

*Benjamin Rosenthal* of counsel (*Rosenthal & Goldhaber*, attorneys), for Norman Burtman and another, appellants.

*Sidney Kant* of counsel (*Henry Spitz*, attorney), for State Commission for Human Rights, respondent.

*Lloyd G. Milliken* of counsel (*George D. Zuckerman* and *Lawrence Gross* with him on the brief), for Louis J. Lefkowitz, Attorney-General of the State of New York.

*Robert L. Carter, Maria L. Marcus* and *Lewis M. Steel* for National Association for the Advancement of Colored People, *amicus curiæ.*

*Per Curiam.* At issue here is the validity of aptitude testing of applicants for acceptance in a sheet metal apprenticeship training program held pursuant to a court order dated November 6, 1964, designed to eliminate discrimination which had existed previously in the industry. Appellants, the Joint Apprenticeship Committee (JAC), comprising employer and union representatives, and which was established by the court order to administer a nondiscriminatory program, seek to reject the examination results because they allegedly do not reflect truly the qualifications of the candidates.

We find in this record no evidence that appellants' decision to require a new test had any discriminatory basis. But it does not follow that their action was reasonable because their motive was not improper. The central fact is that the examination procedure, as established by the underlying order of November 6, 1964 (see *Matter of State Comm. Human Rights* v. *Farrell,* 43 Misc 2d 958) was followed, and the Testing and Advisement Center of New York University, which administered the examinations, reported the results to appellants as it was supposed to do. It did not withhold the grades scored on the test on the ground they were suspect; nor did it attempt to recall the reported results. It did not urge new examinations. The director of the center, Dr. Gobetz, was himself skeptical of the reliability of some of the results, but as stated in his affidavit, " The Center did not make any recommendations to the JAC. The conclusion to hold a new examination under the auspices of the Center was the decision to [*sic*] the labor-management trustees of the JAC." Thus, the question is whether enough has been shown to justify upsetting the results of examinations regular on their face. The testing procedure established by the November 6, 1964 order was devised to implement important public policy and to help promote harmony in a conspicuously sensitive area. [" That order was made and entered upon the consent of all the parties — a consent arrived at through the arduous, painstaking and patient effort of the court, and made possible through the commendable co-operation of the parties." (*Matter of State Comm. of Human Rights* v. *Farrell,* 24 A D 2d 128, 129–130.)] Surely results should not be cast aside when no more appears than that the yea and nay of experts are in counterpoise. Such, to our minds, is the case here, as Special Term's detailed opinion substantiates. There is no claim that

coaching is impermissible. An affidavit of the secretary of the Joint Apprenticeship Committee speaks of "what appears to be unfair coaching." The record makes clear that what is or is not unfair coaching is a subject on which those presumably knowledgeable in the field of aptitude testing may reasonably differ.

Moreover, it seems germane to a determination as to whether the discarding of examination results en masse is equitable to consider the circumstances (1) that a material effect of appellants' action is that the many successful examinees not shown to have been tutored will have lost their rankings and may or may not regain them, and (2) that appellants gave neither those examinees nor the beneficiaries of the allegedly unfair tutoring an opportunity to be heard. The November 6, 1964 order prescribes an appellate procedure by which a rejected applicant for apprenticeship training may have his case reviewed. If reason exists for departing from this seemingly applicable procedure here it is not supplied.

Accordingly, the order filed February 23, 1967 should be affirmed, with costs and disbursements. Settle order on notice.

BOTEIN, P. J., STEVENS, EAGER, RABIN and McNALLY, JJ., concur.

Order entered on February 23, 1967, unanimously affirmed, with $50 costs and disbursements to the respondent-petitioner. Settle order on notice.